2003 SD 70

VAN DE WALLE & ASSOCIATES, L.L.C., formerly known as John Van De Walle d/b/a John Van De Walle & Associates, Plaintiff and Appellee,

v.

Edith BUSEMAN, Defendant and Appellant.

No. 22535.

Supreme Court of South Dakota.

Considered on Briefs April 28, 2003.

Decided June 11, 2003.

Gary L. Pashby, Lisa Hansen Marso of Boyce, Greenfield, Pashby & Welk, L.L.P., Sioux Falls, South DAkota, Attorneys for plaintiff and appellee.

Rick Johnson, Sandy Steffen of Johnson, Eklund, Nicholson, & Peterson, Gregory, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice.

[¶ 1.] Van De Walle & Associates, L.L.C. (Van De Walle) brought suit against Edith Buseman seeking payment for architectural services. Van De Walle later brought a summary judgment motion which was granted on July 10, 2002. Buseman filed a notice of appeal claiming there were genuine issues of material fact whether: 1) Van De Walle should recover its entire claim under an implied contract theory; and 2) what agreement, if any, the parties had for payment.

## FACTS

[¶ 2.] In 1996 Buseman contacted Van De Walle requesting architectural services for a project known as "Hilda's Heritage Home and Silver Threads Apartments." The assisted living facility was to be con-

structed in Gregory, South Dakota, on land owned by Buseman and her husband.[1] After meeting to discuss the Gregory project, Van De Walle sent Buseman a proposal letter outlining the architectural and other services he would provide. He then began providing those services. In July 1996, Van De Walle sent Buseman a standard agreement contract for her signature, but Buseman never signed. Despite the lack of a formal written contract, Van De Walle provided architectural services beginning in April 1996 and continuing through the fall of 1998. During that time, Van De Walle submitted drawings and did other architectural and engineering work. Buseman used Van De Walle's drawings in her efforts to apply for a HUD guaranteed bank loan to finance the project.

[¶ 3.] In December 1996, Van De Walle sent two bills to Buseman totaling approximately $16,000. The bills together covered services provided by Van De Walle from mid April 1996 through November 1996. Thereafter, Van De Walle sent numerous invoices to Buseman detailing the services he was providing. Van De Walle billed Buseman for services provided through June 23, 1998. The total billed to Buseman was $21,149.16. Buseman never paid any of Van De Walle's bills, nor did she contest any of the bills. Buseman never indicated that she did not believe she owed the money nor did she ever inform Van De Walle that he needed to submit the bill to another party. Buseman did, however, pay the invoices that Van De Walle sent her for work done on the project by ATS Engineering and RF Sayer Surveying. She stated in her deposition that she paid those bills in accordance with her agreement with the shareholders in the Gregory Assisted Living LLC[2] that she would be reimbursed with an interest in the LLC.

[¶ 4.] When Buseman could not get a loan guarantee through HUD, the plans done by Van De Walle were scrapped, financing was obtained through community efforts and the project was scaled down significantly. Today, there is a 30–unit assisted living facility named Silver Threads Residential Home. The architectural work on the existing building was not performed by Van De Walle.

[¶ 5.] Throughout her brief, Buseman argues facts that are unsupported by the record. First, she argues that "HUD financing was a pre-requisite for the project." Second she argues that Van De Walle "at all times knew that the assisted living project in Gregory was premised upon approval of HUD financing." She uses these factual statements as the underlying premise for her argument that Van De Walle agreed to perform the services with the knowledge that he would be paid only in the event that HUD guaranteed the financing. Because the record does not support these assertions, we will disregard them in accordance with SDCL 15–26A–60(5).[3]

---

1. Buseman testified at her deposition that this was the second time she had worked with Van De Walle. Buseman hired Van De Walle for a similar project called Hilda's Heritage Home that she had constructed in Lennox, South Dakota. Buseman paid Van De Walle for his work on the Lennox project.

2. In 1999, the Busemans sold the land on which the facility is located to Gregory Assisted Living, LLC in exchange for an ownership interest in the LLC that owns and operates the facility. Gregory Assisted Living, L.L.C. has since been replaced by Silver Threads Residence, L.L.C.

3. SDCL 15–26A–60(5) provides the requirements for an appellant's brief, it states in part that, "[t]he facts must be stated fairly, with complete candor, and as concisely as possible." The statute further provides, "[e]ach statement of a material fact shall be accompanied by a reference to the record where such fact appears."

[¶ 6.] When he did not receive payment for his services, Van De Walle commenced this suit against Buseman on May 4, 2001. The trial court granted Van De Walle's motion for summary judgment and judgment was entered in his favor in the amount of $21,149.16. Buseman appeals. We affirm.

### STANDARD OF REVIEW

[¶ 7.] Our standard of review for the grant of summary judgment is well settled:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Hasse v. Fraternal Order of Eagles,* 2003 SD 23, ¶ 7, 658 N.W.2d 410, 412 (citing *Braun v. New Hope Township,* 2002 SD 67, ¶ 8, 646 N.W.2d 737, 739 (quoting *South Dakota State Cement Plant Commission v. Wausau Underwriters Ins. Co.,* 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01)) (bracketed portions in original).

[¶ 8.] **1. WHETHER THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER VAN DE WALLE MAY RECOVER ITS ENTIRE CLAIM ON THE BASIS OF IMPLIED CONTRACT.**

■ [¶ 9.] An implied contract "is one, the existence and terms of which are manifested by conduct." SDCL 53–1–3. With regard to implied contracts, we have stated:

> [w]hen a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying therefore, a contract will be implied between the parties.

*Randall Stanley Architects, Inc. v. All Saints Community Corp.,* 1996 SD 138, ¶ 20, 555 N.W.2d 802, 805 (quoting *Amert Construction Co. v. Spielman,* 331 N.W.2d 307, 310 (S.D.1983)). Typically, when a person provides services or materials to another and those services or materials are voluntarily accepted, it is inferred that the services or materials "were given and received in the expectation of being paid for, and a promise to pay their reasonable worth implied." *Id.* (quoting *St. John's First Lutheran v. Storsteen,* 77 S.D. 33, 84 N.W.2d 725, 728 (1957)).

■ [¶ 10.] Buseman argues first that whether there was an implied contract is inappropriate for summary judgment because the question must be decided by the trier of fact. Generally, this assertion is true. As we noted in *Lien v. McGladrey & Pullen,* under South Dakota law, the existence of an implied contract between parties creates a genuine issue of material fact to be decided by the jury. 509 N.W.2d 421, 424 (S.D.1993) (citations omitted). However, we have held that an implied contract question may be resolved by summary judgment in some instances:

> [a]lthough ... whether particular conduct is sufficient to support a finding that an implied contract exists is generally submitted to a trier of fact, the question may be resolved by summary judgment if reasonable minds could not differ.

*Weller v. Spring Creek Resort, Inc.,* 477 N.W.2d 839, 841 (S.D.1991) (citing *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641, 651 (Wyo.1989)).

[¶ 11.] To determine whether reasonable minds could differ, we look to each element necessary to support an implied contract. Buseman argues first that she received no benefit from Van De Walle. The question is whether there is a genuine issue of material fact whether Buseman received a benefit. Buseman contends that because the project designed by Van De Walle was never built, Buseman did not benefit from Van De Walle's services. The evidence submitted at her deposition refutes this argument. The evidence indicates that the architectural work done by Van De Walle was necessary in order for Buseman to apply for HUD approval. She did apply for that approval using Van De Walle's drawings. Furthermore, at the time Buseman was commencing the process to apply for a HUD guarantee, Van De Walle had already provided and billed her for $16,000 worth of services. The fact that her plan for financing did not go through as expected, and the fact that the subsequent project differed from that originally planned by her and designed by Van De Walle does not mean that she received no benefit. She had the benefit of his expertise, his drawings and his input on the survey and environmental study which were required for HUD approval. In short, if it was her plan from the beginning to apply for HUD approval, she was aware that she would need the architectural services done before approval, and she utilized and benefited from the services provided by Van De Walle.

[¶ 12.] We next inquire whether Buseman accepted or acquiesced in the benefit provided by Van De Walle. It appears undisputed that Buseman accepted or acquiesced in these services. She accepted all of the drawings submitted to her by Van De Walle and passed them on to her financing institution. She also utilized those drawings to apply for HUD approval. Despite the fact that Van De Walle submitted 21 invoices to Buseman for payment beginning in December 1996, she never told him that she was not going to pay, that she was not responsible for the bills or that payment was contingent on HUD financing. She continued to receive bills through 1998. Her failure to 1) contest the bills; 2) instruct Van De Walle to cease performance; or 3) inform Van De Walle that someone else was responsible for the bills and have him forward them elsewhere eliminates any question whether Buseman "acquiesced" in the services provided.

[¶ 13.] The next question is whether it would be inequitable for Buseman to retain the benefit conferred by Van De Walle without payment. Buseman's own deposition indicates that this element does not create a genuine issue of material fact. Buseman indicates therein that she believes John Van De Walle is honest and that the bills he sent her represented the correct charges for the work. Moreover, Buseman never objected to being personally billed for Van De Walle's services. There is nothing in the record to indicate that Van De Walle agreed to work on a contingency basis or that he volunteered his substantial services to Buseman. On this record, there is no genuine issue of material fact whether it is inequitable to allow Buseman to retain this benefit without payment.

[¶ 14.] **2. WHETHER THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO THE AGREEMENT, IF ANY, THE PARTIES HAD REGARDING PAYMENT.**

[¶ 15.] Buseman contends that there is a genuine issue of material fact whether Van De Walle was aware that payment of his fees was contingent on HUD financing of the project. The record does not support this assertion. First,

HUD does not finance projects such as these; HUD guarantees loans made by financing institutions in order to fund the projects. Van De Walle was aware of this fact and did not believe it would be receiving payment from HUD. Second, there is no indication in the record that Van De Walle was providing these services with knowledge and acceptance of the fact that it might never be paid. Buseman argues that a term in the standard agreement Van De Walle sent her in 1996, indicated that it did not anticipate payment for the work. That term stated:

> The Owner shall compensate the Architect as follows:
>
> 11.2. AN INITIAL PAYMENT of zero Dollars ($0.00) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

As the trial court noted, this was simply a provision regarding fees due upon execution of the agreement. The "zero dollars" refers only to the fact that had she signed the agreement, Buseman was not liable for any payment "up front" or before the work began. This was not a concession by Van De Walle that it did not expect compensation from her for its work.

[¶16.] Third, there is no indication in the record that the assisted living project was premised upon approval of HUD financing. On the contrary, despite the fact that HUD did not agree to guarantee the loan, the assisted living center was built, albeit in a "scaled down" version from the original proposal. Our review of the record reveals that Buseman's repeated assertions that Van De Walle knew his payment was contingent on HUD financing are nothing more than bare assertions with no real support in the record.[4] In fact, Van De Walle testified at his deposition that his notes from his April 24, 1996 meeting with Buseman indicated that she would be seeking conventional funding with Home Federal Bank. Buseman's mere allegations that payment was contingent on HUD financing are insufficient to preclude summary judgment. *Weiszhaar Farms, Inc. v. Live Stock State Bank*, 467 N.W.2d 752, 754 (S.D.1991) (citing *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986)).

[¶17.] The record in this case supports the trial court's grant of summary judgment. Reasonable minds could not believe that Van De Walle agreed to be paid only in the event that HUD guaranteed the financing. Nor could reasonable minds

---

4. For example, at pages 33 and 34 of her deposition, which was not taken until November 13, 2001, Buseman states,

> we discussed—I remember we discussed payment, and he was told that the HUD—when the project was completed, he would be paid from the HUD monies. So up until that time, I did not—I figured he knew that he was going to be paid by HUD, and apparently he did because he would have had me sign—from the very beginning he would have had me sign something saying in June I want to be paid so much, in August I want to be paid so much, and we would sign an agreement that he would be paid accordingly as he—as he worked with the project. He did not do that.

Despite this assertion that Van De Walle knew it would be paid "by HUD," there is no record support for the proposition. First, the argument ignores the reality that Van De Walle executed and sent Buseman a standard agreement contract when he commenced work and it ignores over twenty invoices sent to Buseman by Van De Walle over a two-year period. Furthermore, Buseman is unable to point to any meeting or communication between the parties to support the assertion that there was such an oral understanding.

Assuming the above assertions by Buseman to be correct, as we are required to do on summary judgment, they do not establish, as Buseman now claims, that Van De Walle agreed that payment was contingent on HUD approval. Her assertions, at best, only go to the timing and source of payment.

believe that Buseman received no benefit from the services Van De Walle provided. Because there are no genuine issues of material fact, the trial court is affirmed.

[¶ 18.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.