#30395-aff in pt & rev in pt-MES
**2024 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SCOTLYNN TRANSPORT, LLC,                    Plaintiff and Appellant,

    v.

PLAINS TOWING AND RECOVERY, LLC,           Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN H. FITZGERALD
Judge

* * * *

DAVID J. JENCKS of
Jencks Law, P.C.
Madison, South Dakota                      Attorneys for plaintiff
                                        and appellant.


JOHN W. BURKE
LORA A. WAECKERLE of
Thomas Braun Bernard &
   Burke, LLP
Rapid City, South Dakota                   Attorneys for defendant
                                        and appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 13, 2024
OPINION FILED **04/24/24**

#30395

SALTER, Justice

[¶1.]    Scotlynn Transport, LLC, commenced this action against Plains Towing and Recovery, LLC, alleging several claims related to the disputed ownership of a semi-tractor.  Plains Towing removed the tractor from an accident site and later acquired title to it using the statutory procedure outlined in SDCL 32-36-8 and 32-36-9.  The circuit court granted Plains Towing's motion for summary judgment after concluding that it had complied with SDCL 32-36-8 and lawfully obtained title to the tractor.  Scotlynn appeals, arguing that there are genuine issues of material fact relating to claims raised in Scotlynn's complaint that were not addressed by the court.  We reverse in part and affirm in part.

**Factual and Procedural Background**

[¶2.]    On June 6, 2020, a law enforcement officer directed Plains Towing to remove a semi-tractor and trailer owned by Scotlynn from a crash site in Meade County.  The tractor had sustained significant damage, and Plains Towing towed both the tractor and the trailer to its impound lot in Sturgis.

[¶3.]    On June 8, Fredi Bilbili, fleet manager for Scotlynn, called Plains Towing's office administrator, Deb Leverington, to discuss taking possession of the trailer, storage of the tractor, and payment of fees for both.  The record does not contain any specific accounts of their conversation, but it does include a subsequent email exchange in which Bilbili first wrote:

> Hello,
>
> Please email us the invoice for both units.
> *As per our conversation we will have the driver pick up the*
> *trailer tomorrow morning and tractor will be at your yard till the*
> *insurance adjuster comes.*

-1-

If you have any questions please let us know

Thank you
Fredi Bilbili – Fleet Manager

(Emphasis added.)

[¶4.]     Leverington's response reads:

Fredi,

Attached you will find billing invoices for both the tractor & trailer.  BOTH invoices will need to be paid before we can release the trailer tomorrow.  We don't take credit cards over the phone.  Your driver can pay in person with a credit card, or you can also pay via EFS Check or Wire transfer.

*Storage will continue to accumulate for the tractor after tomorrow's payment.*  Our storage fees are $100 per day.

If you have any questions regarding these invoices, please call John at [redacted], or [redacted] and press Option 2 for Accounts Receivable.

Thank you,

Deb

(Emphasis added.)

[¶5.]     On June 9, a representative from Scotlynn arrived in Sturgis, paid the Plains Towing invoices which included all current fees to date for the tractor and the trailer, and took custody of the trailer.  Scotlynn left the damaged tractor at the Plains Towing impound lot.

[¶6.]     Plains Towing is considered a "removal agency" under South Dakota law, meaning it is "authorized to remove and salvage abandoned and junk motor vehicles and . . . may be authorized by chapter 32-30 to remove vehicles . . . or may be in the business of removing or salvaging vehicles[.]"  SDCL 32-36-2(5).  As

explained more fully below, a removal agency must act promptly to send notice to a removed vehicle's registered owner in order to preserve its ability to collect accumulating storage fees. *See* SDCL 32-36-8. In instances where a removed vehicle goes unclaimed, proper statutory notice also allows a removal agency to apply for the issuance of a new title from the South Dakota Department of Revenue (DOR). *See* SDCL 32-36-9 (allowing removal agencies to apply to the DOR for the title to an impounded vehicle once 30 days after sending notice to the registered owner have expired).

[¶7.] On June 16, Plains Towing completed a pre-printed notice form (the Notice) developed by the DOR and sent it to Scotlynn by certified mail.[1] The DOR form lists four reasons for the notice:

> 1) Abandoned – Vehicle was towed (notice must be sent within 45 days)
>
> 2) Unpaid Repair Bill – Vehicle has a repair bill
>
> 3) Storage Facility Lien – Vehicle has a storage bill
>
> 4) Auction Agency – Vehicle obtained through an insurance company request tow

Plains Towing selected the "abandoned vehicle" reason for its Notice, which Scotlynn claims it never received.

[¶8.] Agents of Scotlynn and Plains Towing did not communicate directly with each other further after the June 9 meeting when a Scotlynn representative paid Plains Towing's invoices and collected its trailer. It is undisputed that

---

1. The DOR form is designated as "SD EForm 2469, Notice of Abandoned, Unpaid Repair Bill, Storage Facility Lien, or Auction Agency."

Scotlynn did not pay any additional storage fees for the tractor after the initial payment on June 9, and Plains Towing did not seek payment by sending an invoice or bill. It is also undisputed that the insurance adjuster referenced in the June 8 email by Scotlynn's fleet manager did not come to the Plains Towing impound lot to inspect the tractor and did not contact Plains Towing until October 29.

[¶9.]     In the meantime, on July 23, Plains Towing applied for the title to the tractor. Plains Towing's manager, John Fabris, called Scotlynn on July 27 in an attempt to discuss the tractor and the Notice. However, there was no answer, and Fabris left a voice message that Scotlynn acknowledges it did not return.

[¶10.]     On September 2, the DOR issued Plains Towing a title to the tractor, which stated "ABANDONDED" under the heading "TYPE." Scotlynn later learned of the newly issued title, and after unsuccessful efforts by its insurer in late-October to negotiate the tractor's return, Scotlynn commenced this action.

[¶11.]     In its complaint, Scotlynn alleged four causes of action: (1) claim and delivery under the theory that Plains Towing had not validly obtained the title to the tractor; (2) conversion under a similar theory that Plains Towing was in wrongful possession of the tractor; (3) a claim that Plains Towing fraudulently misrepresented the legal status of the tractor to the DOR in an attempt to wrongfully take possession of it; and (4) breach of an implied contract for storing the tractor.

[¶12.]     Plains Towing filed two separate summary judgment motions. The first motion requested partial summary judgment relating to the sufficiency of the Notice under SDCL 32-36-8. At issue was whether the statute required

confirmation of receipt when a removal agency sends notice to the registered owner. Relying upon SDCL 32-36-8's text that simply requires a removal agency to "*send written notice by certified mail to the registered owner*," the circuit court concluded that receipt of notice was not required and granted Plains Towing's motion for partial summary judgment. (Emphasis added.) That ruling has not been challenged and is not before us in this appeal.

[¶13.] Plains Towing subsequently filed a second motion for summary judgment on all of Scotlynn's claims, arguing that compliance with SDCL 32-36-8's notice requirements meant that Plains Towing was the lawful owner of the tractor and, therefore, entitled to judgment as a matter of law on each of Scotlynn's four claims. In Scotlynn's opposition to this motion, it relied primarily on two claims alleged in its complaint.

[¶14.] First, Scotlynn argued that there were genuine issues of material fact relating to the possessory interest in the tractor because, in its view, the tractor could not be properly classified as "abandoned" under SDCL 32-36-8 and 32-36-9. Second, Scotlynn argued that there were issues of material fact concerning whether the parties' conduct had created an implied contract for storing the tractor.

[¶15.] The circuit court agreed with Plains Towing and granted its motion for summary judgment. In its memorandum opinion, the court addressed only the issues of the validity of the Notice and Plains Towing's claim of ownership. The court reasoned that the plain language of SDCL 32-36-9 vested Plains Towing with the title to the tractor by operation of law 30 days after sending the Notice to Scotlynn. Further, the court explained that SDCL 32-36-9 provided Scotlynn with a

right to reclaim the tractor within the same 30-day period and prevent Plains Towing from obtaining the title, but Scotlynn failed to do so. The court did not analyze Scotlynn's separate claim relating to the issue of an implied contract between the parties.

[¶16.] Scotlynn appeals, claiming that the circuit court erred by granting Plains Towing's motion for summary judgment. In Scotlynn's view, there are genuine issues of material fact that should have precluded summary judgment relating to whether an implied contract existed between the parties regarding the storage of the tractor and whether Plains Towing acted fraudulently. Scotlynn also argues that the Notice contained certain drafting errors that demonstrate fatal noncompliance with SDCL 32-36-8 and that the tractor was not subject to the ownership transfer provisions of SDCL 32-36-9.

## Analysis and Decision

### *Summary judgment and the statutory procedures for a "removal agency"*

[¶17.] Summary judgment is authorized under SDCL 15-6-56(c) "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Our rules for evaluating a circuit court's determination of a summary judgment motion are well-settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

> If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Zochert v. Protective Life Ins. Co.*, 2018 S.D. 84, ¶ 19, 921 N.W.2d 479, 486 (quoting *Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874).

[¶18.] The statutory procedure lying at the heart of this appeal exists in SDCL chapter 32-36, which is accessed through specific provisions found in SDCL chapter 32-30. Under SDCL 32-30-19, police officers are authorized to remove a vehicle or cause it to be removed "to the nearest garage or other place of safety" when a "person or persons in charge of the vehicle are unable to provide for its custody or removal[.]" In cases where a police officer uses the services of a removal agency to remove the vehicle, SDCL 32-30-15 requires the removal agency to comply with certain statutes set out in chapter 32-36 that govern notice to the vehicle's registered owner and any lienholder as well as the ultimate disposition of the vehicle if it is not claimed:

> Any removal agency as defined by § 32-36-2 which has removed an abandoned or wrecked vehicle pursuant to this chapter or a vehicle impounded pursuant to § 32-30-19 shall comply with the provisions of § 32-36-8 to notify the registered owner, and if encumbered, the lien holder of the vehicle. If no person claims the vehicle within thirty days of that notice, the provisions of §§ 32-36-9 and 32-36-11 shall apply to the disposal of the vehicle.

[¶19.] The notice requirements of SDCL 32-36-8, in turn, provide in relevant part:

> Within forty-five days after any abandoned or junk motor vehicle, any wrecked vehicle as provided by § 32-30-14, or any impounded vehicle . . . has been removed, the removal agency shall send written notice by certified mail to the registered owner, if any, of the abandoned or junk motor vehicle, wrecked vehicle . . . at [its] last known address. If the removal agency

does not give notice within ten days from the date of removal, no storage may be charged beyond the ten-day period until the notice is mailed. The notice shall set forth the date and place of the taking, the year, the make, model and serial number of the abandoned or wrecked motor vehicle and the place where the vehicle is being held, and shall inform the owner . . . of [its] right to reclaim the vehicle under § 32-36-9. The notice shall be on a form provided by the Department of Revenue.

[¶20.] This statute provides an economic incentive for removal agencies to provide notice to a registered owner sooner rather than later. Though the removal agency has 45 days within which to "send written notice by certified mail[,]" the removal agency cannot recover storage fees beyond ten days after a vehicle's removal "until the notice is mailed." *Id.* By sending the notice within the initial ten-day period, however, the removal agency can avoid any such disruption in the accrual of its storage fees. *Id.*

[¶21.] Sending the notice required by SDCL 32-36-8 is not only significant for its effect on a removal agency's ability to recover storage fees, but it also allows a removal agency to invoke SDCL 32-36-9 to obtain ownership of a removed vehicle that has gone unclaimed:

Notwithstanding any statutes to the contrary, title to any abandoned or junk motor vehicle, any impounded vehicle . . .[2]

---

2. The list of vehicles in SDCL 32-36-9 for which a removal agency may ultimately obtain the title following notice is similar to the list contained in SDCL 32-36-8 with one notable exception: the text of SDCL 32-36-9 does not provide authority for a removal company to obtain the title to a "wrecked vehicle as provided by § 32-30-14," which *is* a class of removed vehicles listed in the notice provisions of SDCL 32-36-8. The parties have not noted this omission, and it may not be all that meaningful given the fact that SDCL 32-30-15 does apply to wrecked vehicles and incorporates SDCL 32-36-9 by stating, "If no person claims the vehicle within thirty days of that notice, the provisions of §§ 32-36-9 and 32-36-11 shall apply to the disposal of the vehicle." And, regardless, the circuit court considered the tractor to be an

(continued . . .)

> shall vest in the removal agency after a period of thirty days from the date on which notice was sent under § 32-36-8. The record holder of title or the lien holder may reclaim the motor vehicle . . . . The lien holder and record holder of title shall notify the department in writing within thirty days of their intent to reclaim the motor vehicle. However, if the record holder of title fails to claim and remove the motor vehicle or other scrap metal within thirty days after mailing of notice, title to the vehicle is irrevocably vested in the removal agency.

[¶22.]    Scotlynn challenges Plains Towing's assertion that it owns the tractor by virtue of the title that the DOR issued by advancing two principal arguments. First, Scotlynn asserts the existence and breach of an implied contract under which Plains Towing was obligated to store the tractor for an indefinite period of time. Second, Scotlynn argues that Plains Towing did not strictly comply with statutory notice provisions and that issuance of the title was not authorized. Although Scotlynn's complaint also asserts claims for conversion and fraud, these are in many ways derived from Scotlynn's principal arguments, as noted below. We review these issues de novo because they arise in the context of a summary judgment proceeding and, additionally, because Scotlynn's statutory interpretation arguments present legal questions. *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217, 222.

---

"impounded vehicle," and it seems that the tractor was both a wrecked vehicle and an impounded vehicle.

*Implied contract*[3]

[¶23.] "An implied contract is a fiction of the law adopted to achieve justice where no true contract exists." *Weller v. Spring Creek Resort, Inc.*, 477 N.W.2d 839, 841 (S.D. 1991) (quoting *Mahan v. Mahan*, 80 S.D. 211, 214, 121 N.W.2d 367, 369 (S.D. 1963)).

> An implied-in-fact contract is created when the intention as to the contract is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction. Because an implied contract must contain all the elements of an express contract, both express and implied-in-fact contracts require mutual assent. For implied contracts, however, assent occurs when, after reviewing the facts objectively, a party voluntarily indulges in conduct reasonably indicating assent.

*J. Clancy, Inc. v. Khan Comfort, LLC*, 2021 S.D. 9, ¶ 20, 955 N.W.2d 382, 389–90 (cleaned up).[4]

[¶24.] Here, we conclude that genuine issues of material fact remain concerning the existence of an implied contract. Viewing the summary judgment record in the light most favorable to Scotlynn, we conclude that it has produced

---

3. The fact that the circuit court did not specifically analyze the implied contract claim is not, itself, consequential. We review summary judgment claims as the circuit court did, and we can affirm a decision to grant summary judgment on a different basis as long as it exists in the record. *See Zochert*, 2018 S.D. 84, ¶ 41 n.5, 921 N.W.2d at 491 n.5 ("Although the circuit court overlooked the existence of the bad faith tort in the insurance context, we can affirm the court for any basis which supports the court's ultimate determination." (citation omitted)).

4. The essential elements "to the existence of a contract are: (1) Parties capable of contracting, (2) Their consent, (3) A lawful object, and (4) Sufficient cause or consideration." SDCL 53-1-2.

sufficient information to resist summary judgment. Specifically, Scotlynn asserts that its fleet manager, Bilbili, and Plains Towing's office administrator, Leverington, reached a de facto agreement for storing the tractor at Plains Towing's standard rate until an insurance adjuster was able to inspect the damaged tractor.

[¶25.] This agreement, Scotlynn alleges, was part and parcel of the arrangement by which Scotlynn would, and did, pay all costs associated with both the tractor and the trailer on June 9 before Scotlynn took possession of the trailer. Bilbili's email stated that the "tractor will be at your yard till the insurance adjuster comes[,]" and Leverington's response acknowledged the plan to leave the tractor at the Plains Towing impound yard by stating, "Storage will continue to accumulate for the tractor after tomorrow's payment." In our view, the parties' writings and conduct support the inference of an implied contract to store the tractor.

[¶26.] It may well be, as Plains Towing asserts, that it did not agree to store the tractor indefinitely after Scotlynn's insurance adjuster did not arrive promptly, but this only illustrates the factual nature of the dispute between the parties. If there was an implied contract to store the tractor, additional material facts may relate to the term of any such storage or may perhaps implicate questions of breach. *See Van De Walle & Assocs., L.L.C. v. Buseman*, 2003 S.D. 70, ¶ 10, 665 N.W.2d 84, 87 (discussing summary judgment for implied contract claims).[5]

---

5.      We feel differently about Scotlynn's fraud claim. As pled and briefed in the circuit court, Scotlynn presented this claim as fraud allegedly perpetrated upon the DOR as a result of inaccuracies it alleged in Plains Towing's Notice. On appeal, the argument seems to have changed, and Scotlynn is now

(continued . . .)

[¶27.] Though our determination regarding Scotlynn's implied contract theory requires us to reverse the circuit court's decision to grant Plains Towing's motion for summary judgment, we will address Scotlynn's remaining claims to assist the parties and the court on remand and provide guidance in the event that Plains Towing prevails against Scotlynn following trial on the implied contract claim.

### Statutory compliance

[¶28.] Scotlynn claims Plains Towing did not properly invoke the statutory procedure set out above for obtaining a title from the DOR. Specifically, Scotlynn argues that Plains Towing's Notice under SDCL 32-36-8 did not comply with certain statutory requirements and that the tractor did not fit within the class of vehicles under SDCL 32-36-9 for which the DOR could issue a title.

[¶29.] The technical notice portion of SDCL 32-36-8 reads as follows:

> The notice shall set forth the date and place of the taking, the year, the make, model and serial number of the abandoned or wrecked motor vehicle and the place where the vehicle is being held, and shall inform the owner and any lien holders of their right to reclaim the vehicle under § 32-36-9. The notice shall be on a form provided by the Department of Revenue.

[¶30.] Scotlynn identifies what it describes as three "key drafting errors" in the Notice: (1) the Notice erroneously stated that the tractor had been abandoned;

---

arguing that Plains Towing fraudulently represented *to Scotlynn* that it would store the tractor for a fee. This new iteration of the fraud argument is likely not properly before us, but even if it was, Scotlynn has not identified a specific false statement made on behalf of Plains Towing—a necessity for successfully opposing summary judgment in fraud cases. *See Johnson v. Markve*, 2022 S.D. 57, ¶ 57, 980 N.W.2d 662, 678 (affirming summary judgment against fraud claimant because, among other things, the claimant did "not identify a false statement"); *see also* SDCL 15-6-9(b) (requiring allegations of fraud to be pled with particularity).

-12-

(2) the Notice inaccurately stated the fees Scotlynn owed; and (3) the DOR form prescribed for notice stated that Scotlynn had a right to reclaim the tractor within 30 days of receipt, though the statute contains no such receipt requirement.

[¶31.]	Initially, we note that the DOR form does not provide removal agencies with a choice of vehicle descriptions; it lists only abandoned vehicles. Beyond this, we fail to understand the significance of the Notice's reference to the tractor as abandoned. Notice is required for either abandoned, impounded, or wrecked vehicles, all of which are defined by statute. An abandoned vehicle is one which is "left on a public street or highway or left on private property without the permission of the landowner or tenant[.]" SDCL 32-36-2(1). Under SDCL 32-36-2(2), an impounded vehicle is one "removed or caused to be removed from a public highway pursuant to § 32-30-19[.]" And the definition of a wrecked vehicle applicable to this case is a "vehicle which appears to have sustained reportable accident damage[.]" SDCL 32-30-14.

[¶32.]	Even if the undisputed facts do not establish that the tractor was an abandoned vehicle, they do establish that it was an impounded vehicle and a wrecked vehicle, both of which are listed among the class of vehicles for which notice is required under SDCL 32-36-8. The tractor had to be removed from the accident site, and it had sustained significant damage. The owner of Plains Towing testified during his deposition that he did not believe the tractor was operable, and an affidavit from a Scotlynn employee stated that the tractor needed approximately $43,000 in repairs as a result of damage caused in the Meade County accident.

Under the circumstances, any inaccuracy in designating the tractor as abandoned did not constitute material noncompliance with the notice provision.

[¶33.]     Next, the Notice listed an amount owed by Scotlynn of $852, which Scotlynn claims failed to account for money it paid for removing and storing the tractor when it picked up the trailer.  However, Scotlynn fails to support this claim factually.  Plains Towing, by contrast, lists the exact calculation justifying the amount listed in the Notice as the fees owed as of the date of the notice—storage for eight days (June 9-16) at the rate of $100 per day, or $800, plus sales tax of 6.5%, for a total of $852.  Scotlynn does not respond to this calculation in its reply brief, and we think its claim in this regard lacks merit.

[¶34.]     Scotlynn's third claim regarding the Notice is actually not a claim of statutory noncompliance, but rather, a claim that the notice form provided by the DOR created a receipt requirement for the notice not present in SDCL 32-36-8.  In fact, the receipt-requirement issue was litigated in Plains Towing's first summary judgment motion and was decided adversely to Scotlynn.  The circuit court relied upon the statute's text which states only that a "removal agency shall send written notice by certified mail to the registered owner" and concluded that SDCL 32-36-8 did not require proof of receipt.  Significantly, however, as we noted above, Scotlynn has not challenged this ruling which, logically, would seem a necessary predicate to its argument about the impact of the DOR form.  Therefore, it is enough to say

simply that the form itself does not create a receipt requirement for notice under SDCL 32-36-8.[6]

[¶35.] Finally, Scotlynn makes an additional claim that the tractor was not among the list of vehicles for which the DOR can issue a title under SDCL 32-36-9, which provides, in part: "Notwithstanding any statutes to the contrary, title to any abandoned or junk motor vehicle, any impounded vehicle . . . shall vest in the removal agency after a period of thirty days from the date on which notice was sent under § 32-36-8." We think this challenge to the impounded status of the tractor is essentially a legal question, not a factual one as Scotlynn asserts.[7]

[¶36.] Scotlynn admits that the tractor was an impounded vehicle after it was initially removed on June 6. However, it contends that the tractor "stopped being an 'impounded vehicle' when Scotlynn paid for towing services in the entirety on June 9, 2020, and the vehicle was kept at Plains Towing yard with permission from Plains Towing pursuant to a contract for storage of the Tractor."

[¶37.] Scotlynn's changed-status argument is largely premised upon ultimately prevailing on its implied contract theory at trial. If it does, then Plains Towing should not have sought a title from the DOR. However, if Scotlynn does not

---

6. Plains Towing cites *Premier Bank, N.A. v. Mahoney*, 520 N.W.2d 894 (S.D. 1994) as indirect support for its claim that no receipt requirement is included in SDCL 32-36-8. In *Mahoney*, we observed that the circuit court had not made any findings that a removal agency "sent written notice by certified mail[.]" 520 N.W.2d at 897. However, we did not address a receipt requirement, as Plains Towing acknowledges, and we do not view our *Mahoney* decision as providing any type of holding in this regard.

7. This argument also seems to challenge the authority of the DOR to issue the title to Plains Towing. But the DOR is not a party, and it does not appear that Scotlynn sought administrative relief from the DOR.

win on its implied contract claims, the tractor would seemingly fit the definition of an impounded vehicle in SDCL 32-36-2(2).

## Conclusion

[¶38.]     The circuit court erred when it granted summary judgment because there are disputed material facts relating to Scotlynn's implied contract theory. However, we agree with the court that the "drafting errors" Scotlynn alleges were contained in the Notice would not, themselves, preclude obtaining the title under SDCL 32-36-9.  We reverse the circuit court's grant of summary judgment and remand for further proceedings consistent with our holdings in this opinion.

[¶39.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.